UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ROBINSON (#515217),

        Plaintiff,

                                Case No.  2:16-CV-10135
v.                             Judge George Caram Steeh
                              Magistrate Judge Anthony P. Patti

NICOLE TANSEL (YOCKEY),

        Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S JUNE 27, 2016 MOTION FOR SUMMARY JUDGMENT (DE 17)

**I.**    **RECOMMENDATION**:  The Court should deny Defendant's June 27, 2016 motion for summary judgment (DE 17).

**II.**    **REPORT:**

    **A.**     **Background**

On January 14, 2016, while incarcerated at the Michigan Department of Corrections (MDOC) Woodland Center Correctional Facility (WCC), Plaintiff Michael Robinson filed the instant, verified lawsuit *in pro per* against Nicole Tansel (Yockey), who is described as a WCC Activity Therapist.  (DE 1; *see also* DEs 15, 16.)  As alleged in the complaint, Defendant issued Plaintiff a fabricated misconduct citation for threatening behavior, in retaliation for engaging in

1

protected conduct, and violated Plaintiff's rights under the First, Eighth and Fourteenth Amendments. (DE 1 at 7 ¶ 35.) Among other forms of relief, Plaintiff seeks compensatory damages, punitive damages, and an award of costs. (DE 1 at 8.) Plaintiff was paroled on August 2, 2016.[1]

## B.      Instant Motion

Judge Steeh has referred this case to me for pretrial matters. (DE 10.) Currently before the Court is Defendant's June 27, 2016 motion for summary judgment, presenting the sole argument that Plaintiff "has failed to exhaust his grievances under the MDOC administrative process." (DE 17 at 4, 8-14.)

Plaintiff filed a response on July 6, 2016 (DE 18), Defendant filed a reply on July 15, 2016 (DE 19), and Plaintiff filed a sur-reply on July 29, 2016 (DE 20). Thus, briefing on the instant motion has closed, and it is ready for review by the Court.

## C.      Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[1] *See* www.michigan.gov/corrections, "Offender Search." Plaintiff is also a party to *Robinson v. Beauvias*, Case No. 4:15-cv-14345-TGB-MKM (E.D. Mich.) (concerning events which allegedly occurred at Macomb Correctional Facility (MRF), motion for summary judgment based on exhaustion pending), and *Robinson v. DeAngelo, et al.*, Case No. 2:16-cv-10264-DML-SDD (E.D. Mich.) (against WCC defendants concerning alleged events of December 2016 / January 2016, motion for summary judgment based on exhaustion pending).

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

        "The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . . .   [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

## D.    Discussion

### 1.    Plaintiff's Complaint attempts to allege a First Amendment retaliation claim.

Plaintiff's allegations begin with the events of November 17, 2014. According to Plaintiff, he overheard off-colored comments Defendant made to inmate Dexter Tolliver, informed Defendant that she should not be talking to Tolliver like that, and told Defendant that he was going to report her inappropriate conduct. (DE 1 ¶¶ 6-8.)[2] Thereafter, Defendant informed Plaintiff that "she was going to set him up with a threatening behavior misconduct report[,]" alerted the

---

[2] A copy of what appears to be Tolliver's grievance about the events of November 17, 2014 is attached to Plaintiff's complaint. (DE 1 at 15.)

2:16-cv-10135-GCS-APP   Doc # 22   Filed 09/16/16   Pg 5 of 16   Pg ID 156

"treatment mall officers," and instructed them to escort Plaintiff back to his "cell, pod." (DE 1 ¶¶ 9-11.)

That same day, Defendant issued Plaintiff a Class I misconduct report for "threatening behavior," which Plaintiff claims was fabricated. (DE 1 ¶ 12, DE 1 at 17.) Plaintiff was designated "non-bond list," which he claims resulted in him being "isolated to his cell 24 hours a day, for approx[imately] 9 days straight, against his own will." (DE 1 ¶ 13, DE 1 at 17.) During this time, Plaintiff claims his mental health worsened, and that he endured consequential restrictions regarding his property, access to mental health therapies, attendance at religious services, library access, showering opportunities, and walking to the chow hall to eat, as well as being subjected to full restraints when leaving his cell, etc. (DE 1 ¶¶ 15-16, 17; DE 1 at 22-30.)

Hearing Officer L. Maki conducted a misconduct hearing on November 26, 2014, with the hearing investigator report apparently completed by Hearing Investigator Cobb. The charge was dismissed, as "the reporting staff member's credibility ha[d] been destroyed." (DE 1 ¶ 14, DE 1 at 19-20.) In addition, Plaintiff alleges that he was not supposed to be subjected to the disciplinary

process, as he was housed in WCC's acute care psychiatric facility unit. (DE 1 ¶ 18.)[3]

### 2. Plaintiff must exhaust his administrative remedies before litigating these claims.

Lawsuits by prisoners are governed by 42 U.S.C. § 1997e. Among other things, this statute provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) ("Applicability of administrative remedies").

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other

---

[3] At the time Plaintiff's misconduct report was issued, he was assigned to "Lock: 1-6;" however, the alleged place of violation was "Treatment Mall Rm F." (DE 1 at 17.) Here, Plaintiff relies upon what purports to be a copy of the MDOC Hearing Handbook: "A prisoner who is housed in an acute care psychiatric facility or unit is not subject to the disciplinary process. Incidents of misconduct are documented in the prisoner's medical file, but misconduct reports are not written. However, misconduct reports may be written in residential units for mentally ill prisoners." (DE 1 at 44-45.)

critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  Thus, Plaintiff was required to properly exhaust his claim(s) against Defendant Tansel (Yockey) by complying with the MDOC's Policy Directive 03.02.130, which concerns prisoner/parolee grievances.

However, "[a] PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies."  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).  Stated otherwise, "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

> **3.     There appear to be three (3) grievances arguably at issue in this case, two (2) of which do not appear to have been appealed through Step III of the MDOC's grievance procedure.**

Defendant claims that Plaintiff has not exhausted his administrative remedies as to his First Amendment retaliation claim, as is required by 42 U.S.C. § 1997e(a).  (*See* DE 17 at 8, 13-14.)  By way of background, Plaintiff's MDOC Prisoner Step III Grievance Report indicates that Plaintiff initiated and pursued 5 grievances to Step III while incarcerated at WCC.  (DE 17-3 at 3, 7.)  Four of these grievances were initiated prior to the November 2014 alleged events at issue in this case:  WCC-11-11-0293-19e, WCC-12-10-0341-19e, WCC-2014-07-0332-09aa,

7

and WCC-2014-10-0502-09eA.  Thus, these grievances would not operate to

exhaust Plaintiff's administrative remedies as to a claim which arose in November

2014.  This seems to leave Plaintiff's only other WCC grievance appealed to Step

III (WCC-2014-12-0745-03b) – in addition to two WCC Step I grievances (WCC-

2014-11-0659-17a, WCC 2014-12-0692-28a) mentioned within the record – as

warranting discussion here:

> ### a.   The content and disposition of WCC-2014-11-0659-17a is not apparent from the record.

Although WCC-2014-11-0659-17a (WCC-0659) is mentioned in the

December 2, 2014 Step I rejection of WCC-2014-12-0692-28a (WCC-0692) (*see*

DE 1 at 12, 32), neither the content of WCC-0659, nor its disposition at Step I, is

apparent from the record.  This is problematic, for the reasons discussed below,

even though WCC-0659 does not appear on Plaintiff's MDOC Prisoner Step III

Grievance Report.  (DE 17-3 at 3-15.)

> ### b.   WCC-2014-12-0692-28a was rejected as duplicative of WCC-2014-11-0659-17a.

Plaintiff claims he used the prisoner grievance procedure at WCC in an

attempt to address his claims and specifically refers to Grievance Identifier WCC-

0692, which he dated November 24, 2014 – a date before his November 26, 2014

hearing – and which was received at Step I on December 2, 2014.  (DE 1 ¶¶ 19-20,

DE 1 at 12.)  This grievance concerns the events of November 17, 2014 through

8

November 24, 2014 and alleges, among other things, alleged retaliatory conduct by

Defendant Tansel (Yockey).  W. Cobb responded to the grievance and L. Evans

reviewed the response, the substance of which rejected the grievance as duplicative

of WCC-2014-11-0659-17a.  (DE 1 at 12-13, 32.)  As with WCC-0659, WCC-

0692 does not appear on Plaintiff's MDOC Prisoner Step III Grievance Report.

(DE 17-3 at 3-15.)

### c.    WCC-2014-12-0745-03b, although appealed through Step III, does not appear to concern the events at bar.

This grievance appears to concern requests for protective measures which

were allegedly made on December 10, 12, 16 and 17, 2014, and an alleged

December 14, 2014 altercation.  (DE 17-3 at 18-19.)[4]  It was received at Step I on

December 16, 2014.  (DE 17-3 at 3.)  It seems that incomplete Step III appeals

were received on March 3, 2015 and February 1, 2016, ultimately resulting in the

February 8, 2016 decision to reject the Step III appeal as untimely.  (DE 17-3 at

16-17.)  That this grievance does not operate to exhaust Plaintiff's administrative

remedies as to his claims against Defendant Tansel (Yockey) is buttressed by

Defendant's assertion that this grievance "was not about the incident in question,"

and, in any event, "it was not resolved at Step III until February 8, 2016 – after

Robinson filed the instant complaint."  (DE 19 at 2.)

---

[4] The grievance form attached to Defendant's motion for summary judgment is not labeled with a Grievance Identifier number.  This report assumes this grievance was eventually processed as WCC-0745.

**4.    At this time, the questions that remain about the subject matter and disposition of WCC-0659, together with Plaintiff's multiple attempts to secure grievance appeal forms for WCC-0692, render summary judgment inappropriate on the basis of Plaintiff's failure to exhaust administrative remedies.**

Defendant asserts that Plaintiff "did not appeal either of these grievances through Step III of the MDOC grievance process." (DE 17 at 13.) Defendant also asserts that Plaintiff's "failure to properly exhaust his administrative remedies prevented MDOC from addressing and reviewing his retaliation claims on the merits." (DE 17 at 14.) Having considered Plaintiff's complaint, Defendant's motion, and the briefs in support, the Court should conclude, based on the current record, that Defendant is not entitled to summary judgment for Plaintiff's failure to exhaust administrative remedies as to WCC-0659 and WCC-0692.

First, even if the parties agree that WCC-0659 was not exhausted through Step III, the subject matter and disposition of this grievance at Step I are unclear. Defendant may be correct that "[n]othing in the record indicates that Robinson attempted to exhaust WCC-14-11-0659-17a and was prevented from doing so." (DE 17 at 13.) Likewise, Plaintiff does not seem to contest that WCC-0659 was not appealed through Step III. Nonetheless, as noted earlier, *the content* of WCC-0659 is not apparent from the record, nor is the MDOC's *disposition* of this grievance at Step I. In addition, Defendant's assertion that WCC-0692 was rejected as *duplicative of WCC-0659* is juxtaposed with Plaintiff's verified

10

contention that W. Cobb's December 2, 2014 Step I response and/or grievance rejection letter *improperly rejected* WCC-0692 as duplicative.  (*Compare* DE 1 ¶ 21, DE 1 at 10, 12, 32, DE 17 at 7, 13.)  Thus, in the absence of the grievance materials for WCC-0659, the Court cannot be sure that this grievance is even related to Plaintiff's claims against Defendant contained within the January 14, 2016 complaint (DE 1).

Second, Plaintiff has excused his failure to exhaust WCC-0692.  It is Defendant's position that, "[b]ecause WCC-14-12-06[92]-28a was duplicative of WCC-14-11-0659-17a, . . . the proper procedure was to file a Step II appeal for WCC-14-11-0659-17a."  (DE 17 at 13.)  On the other hand, in addition to contending WCC-0692 was inappropriately rejected as duplicative, Plaintiff details his efforts to appeal this grievance by providing copies of several requests for grievance appeal forms and, in some cases, the responses thereto:

    **(a)**    a December 3, 2014 letter to W. Cobb, requesting a Step II grievance appeal form for WCC-0692 (DE 1 at 34);

    **(b)**    a December 4, 2014 note to Deputy Evans, asking that he ensure that Cobb provides him (Plaintiff) with the appeal form requested, on which Evans notes that the grievance number referenced was rejected as duplicative of WCC-0659 (DE 1 at 36);

    **(c)**    a December 8, 2014 note to Deputy Warden Evans, in which Plaintiff acknowledged Evans's response but again requests that Evans "contact Cobb and ensure that he send[s] me a Step II grievance appeal form to [WCC-2014-12-0692-28a][,]" (DE 1 at 38);

11

    **(d)**    a December 15, 2014 letter to WCC Administration and
Warden Roggenbuck, meant to serve as a Step II grievance
appeal and explaining that the issue – namely, "Nicole Tansel
retaliating on me, by fabricating a threatening behavior
misconduct on me, for telling her I was going [to] report her
misconduct" – is not duplicative to his prior grievance (DE 1 at
40); and

    **(e)**    a December 15, 2014 MDOC Memorandum to Plaintiff from
AA France, which explained:  "Warden Roggenbuck received
your letter concerning your rejected Step I grievance.  You
cannot file a Step II appeal in this manner (sending a letter to
the Warden).  You must follow policy and procedure and file
grievances responsibly, using the correct forms[,]" (DE 1 at 42).

(*See also* DE 1 ¶¶ 22-29.)[5]  In the end, Plaintiff contends he was not given the Step

II grievance appeal form he requested, which prevented him from proceeding to

Steps II and III.  (DE 1 ¶ 30.)  Moreover, Plaintiff claims he made "every

reasonable effort to exhaust his administrative remedies," and, despite his efforts to

solve the problem, "there was no administrative remedy brought forward."  (DE 1

¶¶ 31-32.)  Thus, as Plaintiff states in his response and/or sur-reply, the Step II and

Step III grievance appeal processes were "made unavailable" to him, and there is a

genuine issue of material fact as to whether he exhausted administrative remedies

"available" to him.  (DE 18, DE 20.)

---

[5] Plaintiff's MDOC Step III Grievance Report appears to indicate several
September 2015 attempts to submit materials directly to the Office of Legal Affairs
(OLA), which were returned with cover letters requesting Step I and Step II
documents.  However, it is not clear whether these relate to the grievances and/or
issues at bar.  (S*ee* DE 17-3 at 12-15.)

### 5. Conclusion

It is entirely possible that Plaintiff failed to exhaust his administrative remedies regarding the claims made in the instant case; however, it is also entirely possible that he made every reasonable and required effort to do so but was given the run-around. Based upon the current record, the Court cannot conclude, as Defendant argues, that Robinson's failure "to adhere to MDOC's grievance procedure . . . deprived the MDOC an opportunity for its administrative process to resolve the allegations contained in his lawsuit[,]" or that "Robinson's failure to follow MDOC's requirements prevented MDOC from addressing and reviewing his claims on the merits." (DE 17 at 13-14, DE 19 at 3.) Moreover, to the extent Defendant points to Plaintiff's Step III Grievance Report as evidence that Plaintiff "is very familiar with the MDOC grievance process[,]" - suggesting that the number of Plaintiff's grievances appealed to Step III means he "failed to exhaust his grievance regarding the incidents alleged in his complaint, and he is now attempting to excuse his failure[,]" (DE 19 at 2-3)[6] - Plaintiff's familiarity with the grievance system may instead indicate he was entirely correct to pursue WCC-0692 on the basis that it was improperly rejected. In other words, Plaintiff's

_____

[6] This report appears to show that Plaintiff appealed 39 grievances at various MDOC facilities through Step III, consisting of 5 from WCC (Woodland Center Correctional Facility), 18 from ICF (Ionia Correctional Facility), 12 from ARF (Gus Harrison Correctional Facility), and 4 from MRF (Macomb Correctional Facility). (DE 17-3 at 3-15.)

familiarity with the grievance system cuts both ways. Contrary to the inference
Defendant urges upon the Court, Plaintiff's extensive experience with the
grievance process can just as easily lead to an inference that he is *less* likely to
miss a required administrative step than other prisoners. The standard of review
for dispositive motions under Fed. R. Civ. P. 56 requires that such inferences must
be drawn in the light most favorable to Plaintiff. *Pure Tech Sys., Inc.*, 95 F. App'x
at 135.

Of course, with the evidence currently before the Court, it cannot cast a vote
in this debate. "Failure to exhaust administrative remedies is an affirmative
defense, which the defendant has the burden to plead and prove by a
preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)
(citing *Jones*, 549 U.S. at 216); *see also Surles v. Andison*, 678 F.3d 452, 456 (6th
Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff
has not exhausted his administrative remedies."). If Defendant is relying upon
Plaintiff's failure to properly exhaust WCC-0659 as the basis for her dispositive
motion, she has not satisfied her burden of proof.

Meanwhile, the Court should conclude that Defendant is not entitled to
summary judgment for Plaintiff's failure to exhaust administrative remedies as to
his First Amendment retaliation claim against Defendant Tansel (Yockey) in the
instant complaint, because **(a)** the subject matter and disposition of WCC-0659 at

14

Step I are not clear, and **(b)** Plaintiff's failure to exhaust administrative remedies as to WCC-0692 may be excused, given the evidence that his various, yet unsuccessful, attempts to secure grievance appeal forms, in effect, made his Step II and Step III grievance appeals "unavailable" to him.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: September 16, 2016          s/Anthony P. Patti
                                   ANTHONY P. PATTI
                                   UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on September 16, 2016, electronically and/or by U.S. Mail

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable Anthony P. Patti